FILED
CLERK
2/25/2025 1:51 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
BRENT K. HENRY, SR., 177820,

                Plaintiff,

    -against-

GEORGE DUNCAN of the Law Firm of Macedonio &
Duncan, LLP, and MACEDONIO & DUNCAN, LLP,

                Defendants.
----------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
25-CV-00516(GRB)(LGD)

**GARY R. BROWN, United States District Judge:**

      Before the Court is the application of Brent K. Henry, Sr. ("Plaintiff") to proceed *in forma pauperis* ("IFP") in relation to his *pro se* complaint filed while he is incarcerated at the Suffolk County Correctional Facility (the "Jail") and complaining about the quality of the representation provided by George Duncan, Esq. ("Duncan") and his law firm, Macedonio & Duncan LLP ("Law Firm" and together, "Defendants") during an underlying, on-going, state court criminal prosecution.[1] *See* Docket Entry "DE" 1-2. Upon review of Plaintiff's submissions, the Court finds that he is qualified by his financial position as reported in his IFP application to proceed without prepayment of the filing fee. Accordingly, the application to proceed IFP (DE 2) is granted. However, for the reasons that follow, the Court finds that

---

[1] According to the information maintained by the New York State Office of Court Administration on its public website, Plaintiff was indicted on August 31, 2023 under Indictment No. 72291-23/001 and is charged with violation of N.Y. Penal Law §§ 125.25(01) (intentional murder) and 265.03 (criminal possession of a loaded firearm). *See* https://iapps.courts.state.ny.us/webcrim_attorney/Detail?which=charge&docketNumber=crPltfeTfzAD/rvyp/eyNiOvW9R4J5WUwGqoHEpb2AA=&countyId=YBNR_PLUS_8hMN5FOYsxtqllbKA==&docketId=_PLUS_RT1C/Azs3IlU5e1Ek5MDA==&docketDseq=T/O1YN_PLUS_BG65HkOeqEnpAkw==&defendantName=Henry,+Brent&court=Suffolk+County+Court&courtType=U&recordType=U&recordNum= (last visited on February 19, 2025); *see also* Compl., DE 1 at 10 ¶ 4.

Plaintiff has not alleged a plausible claim and the complaint is thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1).

## BACKGROUND[2]

Plaintiff's complaint is submitted on the Court's civil rights complaint form for actions brought pursuant to 42 U.S.C. § 1983 ("Section 1983") and names Duncan and his Law Firm as Defendants.  Plaintiff alleges that Defendants committed "legal malpractice" following Plaintiff's retention of their services on October 11, 2023 to defend him on "serious charges" in state court.  (*Id*. at ¶ IV.)  According to the complaint, in late August 2023, Bob Macedonio visited Plaintiff at the Jail and they agreed upon a retainer fee. (*Id.*) Plaintiff paid $25,000 to retain the Law Firm and apparently understood that Macedonio would be his lawyer.  (*Id.*) However, "for all intense and purposes George Duncan was the attorney who became my lawyer!" (*Id.*) Plaintiff claims that he lost his trust in Duncan shortly thereafter as Duncan's "ability to preform started to decline." (*Id.*) Plaintiff alleges that Duncan "refused to communicate" with him and has not provided discovery materials to him. (*Id*.) Plaintiff also complains that Duncan has filed a motion in state court seeking to withdraw from the representation.[3] (*Id*.)

As a result, Plaintiff claims that Defendants have committed legal malpractice and have

---

[2] Excerpts from the complaint have been reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

[3] According to the state court docket, that motion was granted on December 13, 2024. *See* https://iapps.courts.state.ny.us/webcrim_attorney/Detail?which=motion&docketNumber=crPltfeTfzAD/rvyp/eyNiOvW9R4J5WUwGqoHEpb2AA=&countyId=YBNR_PLUS_8hMN5FOYsxtqllbKA==&docketId=_PLUS_RT1C/Azs3IlU5e1Ek5MDA==&docketDseq=T/O1YN_PLUS_BG65HkOeqEnpAkw==&defendantName=Henry,+Brent&court=Suffolk+County+Court&courtType=U&recordType=U&recordNum=

deprived him of his right to due process and to the effective assistance of counsel. (*Id.* ¶ IV.A.) For relief, Plaintiff seeks to recover a compensatory damages award in the sum of $125,000 and a punitive damages award in the sum of $150,000 for the "humiliation and embarrassment, severe emotional and mental distress, the disgrace, degradation and indignities, and Personal Injuries suffered" by Plaintiff. (*Id.* at ¶ V.)

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure wherein the district court first considers whether a plaintiff qualifies for IFP status, and then considers the merits of the complaint under 28 U.S.C. § 1915(e)(2). *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

### I.     Qualification for IFP Status

Upon review of the Plaintiff's IFP application (DE 2), the Court finds that Plaintiff is qualified by his reported financial position to commence this action without prepayment of the filing fee. Accordingly, the IFP application is granted. The Court turns next to the merits of the complaint.

### II.    Sufficiency of the Pleadings

As Judge Bianco summarized,

> A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). It is axiomatic that district courts are required to read pro se complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest [ ].'" *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must

assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, --- U.S. ----, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at *1-2 (E.D.N.Y. Dec. 31, 2014).

## DISCUSSION

Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution

4

or federal law. *See id*. The Court analyzes Plaintiff's Section 1983 claims below.

**I.     Lack of State Action**

"[T]he United States Constitution regulates only the Government, not private parties." *Ciambriello v. Cnty. of Nassa*u, 292 F.3d 307, 323 (2d Cir. 2002). Thus, Plaintiff's Section 1983 claim against the Defendants, a private attorney and law firm, necessarily fail because these Defendants are not state actors. *See, e.g.*, *Trotman v. Doe,* No. 18-CV-7469 (GRB)(LB), 2020 WL 5097236, at *7 (E.D.N.Y. Aug. 27, 2020) ("a § 1983 claim against a defense attorney fails for lack of state action because 'it is that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under color of state law merely by virtue of their position.'") (quoting *Shorter v. Rice*, No. 12-CV-0111 (JFB)(ETB), 2012 WL 1340088, at *3 (E.D.N.Y. Apr. 10, 2012); *see generally Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (citation and quotation marks omitted)). Although Section 1983 liability may also extend to a private party who conspires with a state actor to violate a plaintiff's constitutional rights, *Ciambriello*, 292 F.3d at 323-24, Plaintiff has not alleged that the Defendants conspired or jointly acted with a state actor to violate his constitutional rights.[4] Accordingly, Plaintiff has not alleged a plausible Section 1983 claim against the Defendants and these claims are dismissed pursuant to 28 U.S.C. §§

---

[4] In order to state a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). As is readily apparent, Plaintiff includes no such allegations.

1915(e)(2)(B)(ii) and 1915A(b).

**II.     State Law Claims**

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).[5]  The Supreme Court explained that "in the usual case in which all federal-law

---

[5] In an abundance of caution and in light of Plaintiff's *pro se* status, the Court has considered whether subject matter jurisdiction may be invoked under 28 U.S.C. § 1332. This statute requires both diversity of citizenship and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332; *Emiabata v. Farmers Ins. Corp.*, 848 F. App'x 27, 29 (2d Cir. 2021) (summary order); *Perry v. Robles*, 23-CV-7492(LTS), 2023 WL 6881993, at *2 (S.D.N.Y. Oct. 16, 2023) ("To establish the court's diversity jurisdiction, a plaintiff must first show that he and the defendants are citizens of different States. . . . The plaintiff must also allege to a 'reasonable probability' that his or her claims are in excess of the sum or value of $75,000, the statutory jurisdictional amount." (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (cleaned up) (additional citation omitted). To establish diversity jurisdiction, there must be complete diversity of citizenship between the plaintiffs and the defendants. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005); *Emiabata*, 848 F. App'x at 29. This means that a plaintiff cannot be a citizen of the same state as any of the defendants. *Id.* (citing *Pa. Pub. Sch. Emps.' Retirement Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117-18 (2d Cir. 2014) ("Section 1332 requires that all plaintiffs must be citizens of states diverse from those of all defendants.") (internal quotation marks omitted). Courts evaluate diversity "by examining citizenship as of the time suit is commenced," *Housand v. Heiman*, 594 F.2d 923, 926 n. 6 (2d Cir. 1979), and "[a]n individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). In this context, domicile "is defined as the place where a person 'has his true fixed home . . . and to which, whenever he is absent, he has the intention of returning.'" *Corio*, 232 F.3d at 42 (internal quotation marks and citation omitted). In addition, a prisoner "retains his pre-incarceration domicile," and the Court must therefore look to that state when evaluating whether diversity exists between the parties. *Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251, 253 (E.D.N.Y. 2004); *Blumatte v. Quinn*, 521 F. Supp. 2d 308, 312 n.3 (S.D.N.Y. 2007) (explaining that there is a rebuttable presumption that a prisoner retains his or her pre-incarceration domicile). Here, Plaintiff has not alleged his pre-incarceration domicile nor has he

claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - - judicial economy, convenience, fairness, and comity - - will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a plausible federal claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction over Plaintiff's purely state law claims - - such as legal malpractice - - as is alleged in the complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over the state-law claims contained in Plaintiff's complaint.

### III. Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo*

---

alleged the domicile of either Defendant. Rather, he has provided their business address. These allegations do not establish that the diversity requirement is met because "residence alone is insufficient to establish domicile for jurisdictional purposes." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019) (citing *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)); accord *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997) ("[I]t is well-established that allegations of residency alone cannot establish citizenship . . . ."). Given that Plaintiff has not provided facts regarding his or either of the Defendants' domicile, and because allegations of residency alone are insufficient to establish diversity jurisdiction, this Court's diversity subject matter jurisdiction may not be invoked. *SBL Enterprises LLC v. Keystone Cap. Corp.*, No. 21-CV-4459, 2021 WL 2000365, at *3 (S.D.N.Y. May 19, 2021) (collecting cases) (*Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 567 (2d Cir. 2000) (finding that plaintiffs failed to allege diversity in complaint because "they had alleged only the residence, and not the citizenship (or domicile), of the parties"); *Sekiguchi v. Long*, No. 3:13-cv-01223 (CSH), 2013 WL 5357147, at *2 (D. Conn. Sept. 25, 2013) ("[W]hile Plaintiff as alleged each party's residency, Plaintiff has not established any party's citizenship . . . ."); *Jordan v. Verizon Corp.*, No. 08 Civ. 6414(GEL), 2008 WL 5209989, at *4 (S.D.N.Y. Dec. 10, 2008) (finding that plaintiff did not properly allege diversity of citizenship where she "d[id] not make a proper allegation as to her own citizenship" and "allege[d] only residency - not citizenship").

*v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). However, leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Here, amendment would be futile because the deficiencies noted above are substantive and could not be cured with better pleading. Accordingly, leave to amend the complaint is denied and Plaintiff may pursue any valid claims against the Defendants in state court.

## IV.     Section 1915 Privilege

The Second Circuit has long-established that "the benefit of § 1915 is a privilege, not a right . . . and that the court's 'extra measure of authority' in dealing with § 1915 actions is necessary because frivolous suits unduly burden the courts, sometimes obscuring meritorious claims, occasion significant expenditures of public monies, and are a means by which plaintiffs can use the federal government to harass individual defendants." *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983) (citations omitted). As *in forma pauperis* status is not a constitutional right but rather a congressionally created benefit, it can be extended or limited by Congress. *Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007) (citation omitted). Indeed, to help staunch a "flood of nonmeritorious" prisoner litigation, the Prison Litigation Reform Act of 1995 (PLRA) established what has become known as the three-strikes rule. *Lomax v. Ortiz-Marquez*, 590 U.S. ----, 140 S. Ct. 1721, 1723 (2020) (citing *Jones v. Bock*, 549 U.S. 199, 203 (2007)). That rule generally prevents a prisoner from bringing suit *in forma pauperis*—that is, without first paying the filing fee—if he has had three or more prior suits "dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." *Id.* (quoting 28 U.S.C. § 1915(g)).

In determining when a plaintiff should receive a strike for a dismissed case under section

1915(g), the Second Circuit has made clear that district courts should not impose strikes in its dismissal orders. *See James v. McIntosh,* No. 24-624, 2024 WL 4662980, at *1 (2d Cir. Nov. 4, 2024) (citing *Deleon v. Doe*, 361 F.3d 93, 95 (2d Cir. 2004) (*per curiam*)); *see also Barreto v. Cnty. of Suffolk*, 455 F. App'x 74, 76 (2d Cir. 2012). Rather, a district court should only consider whether a plaintiff has three strikes if it appears that the plaintiff has run afoul of section 1915(g) and is barred from proceeding *in forma pauperis* in the instant action. *See id.* As such,

> [T]he district court judgments should clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is "frivolous," "malicious," or "fails to state a claim," whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons.
>
> Clarifications of this sort will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).

*Deleon*, 361 F.3d at 95 (citing *Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999)) (purgandum).[6]

Incarcerated litigants face a greater risk of various harms while in prison, including physical injuries, poor prison conditions, inadequate medical care, and other constitutional deprivations, making their access to relief from the judicial system of the utmost importance. *See Rosa v. Doe*, No. 21-2628, 2023 WL 8009400 (2d Cir. Nov. 20, 2023) (discussing history and importance of IFP status). This access, however, when done through IFP status, is not unrestricted and the indigent prisoner should be made aware of the limitations. Once a prisoner accrues three dismissals based on either frivolousness, maliciousness, or for failure to state a claim, that prisoner will be prohibited from commencing another action or appeal IFP unless he is in imminent physical danger—regardless of the meritoriousness of the case. *See, e.g., Polanco*

---

[6] *See Farmers Property and Casualty Insur. Co. v. Fallon*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "purgandum" to indicate the removal of superfluous marks for the ease of reading).

*v. Hopkins*, 510 F.3d 152, 155 (2d Cir. 2007) (affirming dismissal of prisoner's IFP action alleging claims of exposure to mold and unjust discipline based on the three-strikes rule); *Fate v. New York*, No. 19-CV-4107 (CS), 2021 WL 1177966, at *7 (S.D.N.Y. Mar. 26, 2021) (dismissing prisoner's IFP case alleging campaign of police harassment and retaliation and a physical assault under the three-strikes rule). Indeed, "[r]equiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state." *Nicholas v. Tucker*, 114 F.3d 17, 21 (2d Cir. 1997) (citation omitted).

Here, the Court does not impose any strikes against the Plaintiff but will note, however - - for the *pro se* Plaintiff's benefit - - that the statute under which he is proceeding is a privilege subject to revocation. And the plain language of § 1915(g) suggests that such revocation is compulsory in the face of abuse. *See* 42 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or proceeding under this section if the prisoner has [violated the three-strike rule] unless the prisoner is under imminent danger of serious physical injury.") (emphasis added); *see also Lomax*, 140 S. Ct. at 1723-24 ("That provision bars further IFP litigation once a prisoner has had at least three prior suits dismissed on specified grounds."). Accordingly, the Plaintiff proceeding IFP here is cautioned that the dismissal of the present complaint for failure to state a claim may be considered a strike by a future court and contribute to the determination that he has violated the three-strikes rule of § 1915(g), barring him from commencing further actions or appeals IFP.

## CONCLUSION

Based on the foregoing, Plaintiff's IFP application (DE 2) is granted; however, the complaint (DE 1) is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1).

The Clerk of the Court shall: (1) enter judgment; (2) mail a copy of this Memorandum and Order to the *pro se* Plaintiff at his address of record in an enveloped marked "Legal Mail"; and (3) note service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED**.

/s/ Gary R. Brown
_____

**Gary R. Brown**
**United States District Judge**

Dated: February 25, 2025
Central Islip, New York